IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEVEL 3 COMMUNICATIONS, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| CHARLES E. BOX, Chairman, ERIN M. O'CONNELL-DIAZ, ROBERT F. LIEBERMAN, and LULA M. FORD in Their Official Capacities as Commissioners of the Illinois Commerce Commission and Not as Individuals, | ) ) No. 07 C 6716 ) ) ) Honorable Charles R. Norgle ) ) |
| Defendants, | ) ) |
| and | ) ) |
| NEUTRAL TANDEM, INC and NEUTRAL TANDEM-ILLINOIS, LLC | ) ) ) |
| Defendants/Intervenors. | ) |

## ORDER AND OPINION

CHARLES R. NORGLE, District Judge

      Before the Court are two Motions to Stay or Dismiss Plaintiff Level 3 Communications, LLC's ("Level 3") Complaint for Declaratory and Injunctive Relief. The motions were filed concurrently by Defendants Charles E. Box, Erin M. O'Connell-Diaz, Robert F. Lieberman and Lula M. Ford (collectively, "Commissioners") and by Defendant-Intervenors Neutral Tandem, Inc. and Neutral Tandem-Illinois, LLC ("Neutral Tandem"). The Defendants and the Intervenors (collectively, "Defendants") request that the Court stay this proceeding until Level 3's appeal in the Illinois Appellate Court is resolved, or, in the alternative, that the Court dismiss the complaint all together. For the following reasons, the motions to stay are granted.

# I. BACKGROUND

## A. FACTS

Level 3 and Neutral Tandem are telecommunications providers certified by the Illinois Commerce Commission ("ICC"). Their relationship is rather complex. In simple terms, when a call originates from a customer of one carrier network (e.g. Verizon) to a customer of another, different carrier network (e.g. Sprint), that call often goes through a "transit provider" or "middle man" that is directly connected to both networks. Neutral Tandem operates as one of these "middle men" between carrier networks. By comparison, AT&T also operates as a "middle man" between carrier networks, but offers availability to a much larger number of other networks. Neutral Tandem, quite simply, is a small-scale alternative to AT&T. Level 3 operates as a carrier network that is connected to other carrier networks through either Neutral Tandem, AT&T or, perhaps, some other "middle man." In this case, Level 3 sought to cut out Neutral Tandem as one of its "middle men." This dispute arose as a result.

Since 2004, Level 3 and Neutral Tandem have been directly interconnected and have operated under contracts to exchange traffic. In 2007, Level 3 informed Neutral Tandem that it intended to sever the interconnection between the parties' networks in Illinois, which, in effect, would terminate the arrangement by which Neutral Tandem delivered communications traffic to Level 3 and, ultimately, to Level 3's customers. On April 25, 2007, Neutral Tandem filed a complaint with the ICC alleging that Level 3's actions violated the Illinois Public Utilities Act ("IPUA"), which prohibits telecommunications carriers from "knowingly imped[ing] the development of competition in any telecommunications service market." 220 ILL. COMP. STAT. § 5/13-514. Level 3 denied the charges and asserted, among other things, that the ICC's regulation of the interconnection between competitive local exchange carriers is inconsistent

with the Federal Telecommunications Act. In other words, Level 3 argued that the Telecommunications Act impeded the ICC's authority to bar the planned disconnection.

Later in 2007, the ICC assigned an Administrative Law Judge ("ALJ") to oversee the matter, and the parties conducted a two-day hearing to present evidence in support of their positions. On June 25, 2007, the ALJ issued an order barring Level 3 from disconnecting the parties' networks. The ICC adopted the ALJ's order in its entirety and on July 10, 2007, the ICC ordered Level 3 to cease and desist its threat to disconnect or otherwise disrupt the parties' interconnection, to cease and desist its various violations of Illinois law, and to maintain direct interconnection with Neutral Tandem until further order of the Commission ("ICC Order").

On September 10, 2007, Level 3 filed a direct appeal of the ICC's Order to the Illinois Appellate Court. In its Docketing Statement submitted to the Illinois Appellate Court, when asked to briefly describe the nature of the case, Level 3 stated:

> The [ICC's] Order and the Order on Rehearing are arbitrary and capricious, not supported by substantial evidence, beyond the authority and jurisdiction of the Commission, are **preempted by federal law**, and otherwise violate Illinois and Federal Constitutions and laws. Level 3 filed this Appeal for the purpose of having this Court determine the reasonableness and lawfulness of the Order and the Order on Rehearing... .

Def. Neutral Tandem Memo In Support, Ex. 4, Docketing Statement at p. 5 [emphasis supplied].

Moreover, in its Opening Brief to the Illinois Appellate Court, Level 3 asserted, among other things, that:

> As a matter of law, the ICC cannot determine that an indirect interconnection unreasonably impairs the speed, quality or efficiency of services, or has an unreasonable substantial effect on any service, because indirect interconnections have been specifically approved and recognized by the [Federal Communications Commission ("FCC")] as a reasonable method of interconnection. [...] The Commission's conclusion that Level 3 was forcing Neutral Tandem and its customers into an efficient method of interconnection as a matter of law is wrong.

3

Def. Neutral Tandem Memo in Support, Ex. 5, Petitioner's Opening Brief at pp. 23-24. Level 3 further argued, in line with the Federal Telecommunications Act, that:

> Section 251(a) of the [Federal] Telecommunications Act requires carriers to either directly or indirectly interconnect, and the FCC's Local Competition Order states that competitive carriers have the option to do either to [sic] "allow significant flexibility for small entities to choose the most efficient and economical arrangement for their particular strategy."

Id. at pp. 28. Using the FCC's order, Level 3 stressed that "Because the ICC has departed from past practice and federal policy, its 'decisions are entitled to less deference' and should be overturned." Id. at p. 29. Moreover, in arguing that the ICC lacked the authority to apply its interpretation of the Illinois Public Utilities Act retroactively, Level 3 averred that such a conclusion amounted to retrospective administrative regulation that takes away from carriers like Level 3 vested rights that they acquired under § 251 of the Federal Telecommunications Act. Id. at pp. 29-30. Level 3 went on, contending that:

> [B]ecause Federal law has allowed both direct and indirect interconnection since 1996 (five years before the adoption of § 13-514 [of the Illinois Public Utilities Act]) and because the ICC has tacitly approved indirect interconnection since 1996, the Commission is barred from now concluding in a complaint proceeding brought by Neutral Tandem that it is anticompetitive for Level 3 to indirectly interconnect with Neutral Tandem.

Id. at p. 32.

Level 3 also attacked the ICC's Order because it eliminated from the parties' 2004 contract the requirement that Neutral Tandem compensate Level 3 for traffic delivered to Level 3's network. On this point Level 3 asserted that the ICC, through its edict,

> [P]resumed that Level 3 may simply request compensation from originating carriers, which would then cover the costs of maintaining a direct interconnection with Neutral Tandem. However, that assumption has been rejected by the FCC. The FCC acknowledges that CLECs have difficulty in establishing intercarrier compensation arrangements, and confirmed that interconnection arrangements between CLECs must be established through voluntary agreements, not regulatory

4

edict. [citations omitted]. Thus, this modification of the 2004 Contract is not only improper, but is also based upon erroneous conclusions.

Id. at pp. 40-41.

Finally, Level 3 claimed that the ICC misinterpreted federal law, where the FCC had already concluded, in essence, that the ICC could not compel Level 3 to directly interconnect with a transit provider. Id. at pp. 46-47. In this way, Level 3 concluded that it was improper for the ICC to place such an obligation on Level 3, where "the FCC did not even impose [such an obligation] on the [incumbent local exchange carrier]." Id. at 48.

## B. PROCEDURAL HISTORY

On November 29, 2007, two months after filing its appeal in the Illinois Appellate Court and making the above arguments, Level 3 filed its complaint in this Court, seeking to enjoin the ICC from enforcing its July 10, 2007 Order and seeking a declaration that federal law preempts the ICC's Order. Level 3 is therefore challenging in this Court the same ICC Order that it is challenging in its state court appeal. The Defendants, in turn, filed the instant motions, opposing the action in this Court because Level 3 re-alleges many of the same federal law arguments that it raised in the previously-filed state court appeal – most notably, that federal law preempts the ICC's Order.

Again, Level 3 filed a direct appeal to the Illinois Appellate Court on September 10, 2007. The Illinois Appellate Court notified the parties that oral argument on Level 3's state appeal is set for June 10, 2008, which, as Neutral Tandem puts it, makes the appeal ripe for decision at any point after June 10, 2008.

5

## II. DISCUSSION

### A. STANDARD OF DECISION

While federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred to them, Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976), "[t]his court deprecates the practice of filing two suits over one injury – often with an argument based on state law presented to a state court, and an argument arising under federal law presented to a federal court." Rogers, et. al. v. Desiderio, et. al., 58 F.3d 299, 300 (7th Cir. 1995) (Easterbrook, J.). Federal courts employ a number of devices to give state judges the primary responsibility for supervising the state administrative process, so in many cases a litigant who wants to present both state and federal objections is driven to the state forum. Id. at 301. This is so because Illinois recognizes that a state judgment has a preclusive effect in federal litigation. Id. (citing State Life Ins. Co. v. Bd. of Educ., 401 Ill. 252, 257 (1948)). With this in mind, the Seventh Circuit has suggested that a federal judge confronted with duplicative litigation stay the federal "proceedings until an earlier-filed state case has reached a conclusion, and then (but only then) to dismiss the suit outright on grounds of claim preclusion." Rogers, 58 F.3d at 302 (citing Colorado River, 424 U.S. at 817-21 (1976); LaDuke v. Burlington Northern R.R., 879 F.2d 1556 (7th Cir. 1989)).

Otherwise, "a federal court may stay a suit in exceptional circumstances when there is a concurrent state proceeding and the stay would promote 'wise judicial administration.'" Clark v. Lacy, 376 F.3d 682, 685 (7th Cir. 2004) (citing Colorado River, 424 U.S. at 818.). The purpose of the Colorado River doctrine is avoid duplicative litigation. However, abstention is the exception and a federal court should not surrender its jurisdiction simply because an action is pending in state court. See Clark, 376 F.3d at 685 (citing LaDuke, 879 F.2d at 1558). In

6

determining whether the Colorado River doctrine applies, the court must undertake a two-part analysis. E.g., Tyrer v. City of South Beloit, 456 F.3d 744, 751 (7th Cir. 2006). First, the court must determine whether the state and federal actions are actually parallel. Id. Then, once it is established that the suits are sufficiently parallel, "the court must consider a number of non-exclusive factors that might demonstrate the existence of 'exceptional circumstances.'" Id. These factors include: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained in the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative process of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. AXA Corporate Solutions v. Underwriters Reinsurance Corp., 347 F.3d 272, 278 (7th Cir. 2003) (citing Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc., 962 F.2d 698, 701 (7th Cir. 1992)). And in applying these factors, there is a general presumption against abstention. Sverdrup Corp. v. Edwardsville Cmty. Unit Sch., 125 F.3d 546, 549-50 (7th Cir. 1997). This Court shall examine the case pursuant to the Colorado River doctrine to determine whether a stay is necessary.

## B. PARALLEL ACTIONS

Level 3 contends that the case before the Illinois Appellate Court and the case before this Court are not parallel under Colorado River. According to Level 3, the action in this Court raises an issue that will not be resolved by the state litigation – whether the ICC Order is preempted by the Federal Telecommunications Act. Pl.'s Brief in Opposition to Intervenor's Mot. at 6. To answer this question, Level 3 insists that the inquiry involves facts, legal analysis and parties that

are unique to the federal case, and thus the federal issue does not repackage the state issues under a difference cause of action. Id.

To be parallel, however, "it is not necessary that there be formal symmetry between the two actions." Clark, 376 F.3d at 686. The Court need only look "for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." Lumen Const., Inc. v. Brant Const. Co., Inc., 780 F.2d 691, 695 (7th Cir. 1985). Generally, "a suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." Tryer, 456 F.3d at 752 (citing Interstate Material Corp. v. City of Chi., 847 F.2d 1285, 1288 (7th Cir. 1988). Among other things, "to determine whether two suits are parallel, a district court should examine whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues." Clark, 376 F.3d at 686.

### 1. Same Parties

On the question of whether the two actions are parallel, the Commissioners point out that the same parties (Level 3, the ICC, and Neutral Tandem) are litigating the state appeal and the federal action. Level 3 does not contest this assertion, except to say that the federal suit now involves both the ICC and the Commissioners of the ICC in their official capacity. Pl.'s Brief in Opposition to Intervenor's Mot. at 6. There is no difference, however, in naming the Commissioners in their official capacity and naming the ICC as parties to the suit, since these designations accomplish the same goal – a suit against the ICC. See Kentucky v. Graham, 473 U.S. 159- 165-67 (1985) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity ... for the real party in interest is the entity.") (internal citation omitted); see also Gray v. Lacke, 885 F.2d 399, 405 (7th Cir. 1989) ("Suits against employees in their official capacities are essentially suits against the government entities for which they

8

work."); Henry v. Farmer City State Bank, 808 F.2d 1228, 1238 (7th Cir. 1986) ("[A]n official-capacity suit is treated as a suit against the governmental entity."). And even if the parties differed slightly in the two actions, this still would not preclude a stay under Colorado River. See Schneider Nat'l Carriers, Inc. v. Carr, 903 F.2d 1154, 1156 (7th Cir. 1990) (finding cases parallel where plaintiff named additional defendants in state action); see also U.S. ex. rel. Hartigan v. Palumbo Bros., Inc., 797 F.Supp. 624, 634 (N.D. Ill. 1992) ("The fact that the parties in the two suits are not identical also does not preclude a *Colorado River* stay.") (citing Lumen Constr., Inc. v. Brant Constr., Inc., 780 F.2d 691, 695 (7th Cir. 1985)). These long-standing tenets invalidate Level 3's attempt to differentiate the parties involved in the state and federal proceedings, especially where the parties, even if slightly different, would maintain identical interests in the two suits. Caminiti & Iatarola v. Behnke Warehousing, Inc., 962 F.2d 698, 700-01 (7th Cir. 1992) (finding parties with "nearly identical" interests to be substantially the same for Colorado River purposes). The Court therefore agrees with the Commissioners and Neutral Tendem that the same parties are litigating both the state appeal and the federal action filed in this Court.

### 2. *Same Facts*

As to whether the two suits involve the same facts, the Commissioners argue that Level 3 relies on the same factual predicate when challenging the ICC's Order in the state appeal and in the federal suit. Level 3, however, avers that the federal suit will involve facts regarding "Neutral Tandem's transmission of CMRS and VoIP interstate traffic" that it did not raise in the state appeal. Pl.'s Brief in Opposition to Intervenor's Mot. at 6. But these added technical facts do not make Level 3's federal case unique. See Clark, 376 F.3d at 686-87 (finding suits parallel where complainant premised its additional claims in federal court on a similar cause of action in

9

state court). After comparing Level 3's appellate brief with the complaint filed in this Court, the Court finds that many of the factual allegations are largely similar, and that the differences are more superficial than substantive. Both actions seek relief from the ICC's Order and both suits arise from the ICC's resolution of a dispute over the parties' interconnection agreement. In this way, the factual basis for each suit remains substantially the same, despite the addition of technical facts that, as Neutral Tandem points out, Level 3 could have raised before the ICC – Illinois's telecommunications authority – or in the Illinois Appellate Court. Raising these facts in this Court does not differentiate the substantive factual aversions underlying both suits. The Court thus finds that the two suits arose substantially out of the same set of facts.

### 3. *Similar Factual and Legal Issues*

The final question to our analysis is whether the two suits involve similar factual and legal issues, notwithstanding whether they have been repackaged under different causes of action. Tyrer, 456 F.3d at 752. On this point, the Commissioners insist that the facts and issues are so comparable that if Level 3 is successful in its state appeal, then the decision would dispose of Level 3's claims presented in this Court. See Comm'rs Mem. In Support at 5. Moreover, the Commissioners argue that if the Illinois Appellate Court denies Level 3 relief, the decision would likely dispose of all claims in the federal suit through claim preclusion. Id. While this may be the case, Neutral Tandem offers more specific evidence.

In its reply brief, Neutral Tandem cites to several instances in which Level 3, it its state appellate brief, made arguments that are substantially similar to those made in this case. For instance, Neutral Tandem points out that one of Level 3's main contentions in both the Illinois Appellate Court and this Court is that "the ICC exceeded its authority by ... compel[ing] Level 3 to directly interconnect with Neutral Tandem." While this argument does not spell out, exactly,

10

an action for preemption, this argument is, in effect, precisely the argument before this Court. Indeed, this Court and the state appellate court are likely to hear similar arguments and decide the case based on similar submissions. As such, much of the factual and legal analyses would be substantially similar. Level 3 simply repackaged the argument in federal court under a different cause of action – an injunction due to federal preemption. See Fofi Hotel Co., Inc. v. Davfra Corp., 846 F.Supp. 1345, 1349 (N.D. Ill. 1994) (noting that for purposes of a stay there need only be a substantial similarity of the issues between the two cases, even though the purposes are not identical). What is more, if the Illinois Appellate Court finds that pursuant to the Federal Telecommunications Act the ICC exceeded its authority when it forced Level 3 to maintain its connection with Neutral Tandem, that decision could moot the issue before this Court or, in the very least, could have a preclusive effect on the issues raised in Level 3's claims in support of preemption. Accordingly, because the Court finds that the two suits involve the same parties, arise out of the same facts and raise similar factual and legal issues, we find that the state appellate case and this federal suit are substantially parallel for purposes of abstention under Colorado River.

## C. FACTORS THAT DEMONSTRATE EXCEPTIONAL CIRCUMSTANCES

Having determined that the state and federal actions are sufficiently parallel, the Court must next determine whether exceptional circumstances exist that justify deference to the state court proceedings. In re Chi. Flood Litigation, 819 F.Supp. 762, 765 (N.D. Ill. 1993). Many of the factors the Court must consider on this issue weigh heavily in favor of abstention. In particular, the Court finds that accepting jurisdiction in federal court would result in piecemeal litigation, "which occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Dayton Hudson Corp. v. Chi. Flood Executive

11

Comm., No. 95 C 6779, 1996 WL 451310, at *3 (N.D. Ill. Aug. 6, 1996). As this Court previously discussed, "if the Illinois Appellate Court finds that pursuant to the Federal Telecommunications Act the ICC exceeded its authority when it forced Level 3 to maintain its connection with Neutral Tandem, that decision could moot the issue before this Court or, in the very least, could have a preclusive effect on the issues raised in Level 3's claims in support of preemption." See, supra, § II.B.3. In light of this, to allow both actions to proceed simultaneously would result in "duplicative and wasteful litigation" with the potential for inconsistent outcomes. Caminiti, 962 F.2d at 701-02; Tryer, 456 F.3d at 756-57. The Court finds it appropriate to curb any rewards for "strategic gamesmanship" and to avoid piecemeal litigation.

In addition, the Court finds it relevant that Level 3 filed its appellate action several months before filing its action in federal court. Illinois was therefore the first to obtain jurisdiction over Level 3's claims. Moreover, the state appellate action has been fully briefed as of March 2008, while this action is yet to reach the discovery stage. There is no denying that the state action has advanced more rapidly than the instant case and that it is much closer to a resolution. Accordingly, the factors that consider the order in which jurisdiction was obtained and the relative progress of the state proceedings, likewise, lean in favor of a stay under Colorado River. See AAR, Inc. v. Nimelias Enterprises S.A., 250 F.3d 510, 521 (7th Cir. 2001) (affirming a stay where, among other things, the state litigation was commenced first and had "progressed substantially towards completion").

The Court also finds that the state appellate action adequately protects Level 3's right to relief from the ICC's Order. In the state action, Level 3 is challenging the authority of the ICC to interpret its enabling statute, the IPUA, and to determine the scope of its jurisdiction over

intrastate telecommunications in Illinois. In the federal action, Level 3 is also challenging the authority of the ICC to interpret the IPUA, within the confines of the Federal Telecommunications Act. In short, both actions seek relief from the ICC's Order. And if the Illinois Appellate Court finds that the ICC acted without authority, such a ruling would relieve Level 3 of the requirements set forth in the ICC's Order. The same thing would happen here. As such, the Court finds that the Illinois Appellate Court is well-equipped to protect Level 3's right to relief from the ICC's Order.

Finally, there is no dispute that the state court has concurrent jurisdiction over this matter, as Level 3 could have brought its preemption claim in conjunction with its state law claims. In fact, Illinois statutes expressly authorize the Illinois Appellate Court to adjudicate claims that the ICC violated federal laws such as the Federal Telecommunications Act. See 220 ILL. COMP. STAT. § 5/10-201(e)(iv)(C). Therefore, this factor, like those discussed previously, supports a stay of the federal proceedings. The rest of the factors in this analysis are either neutral or non-determinative.

In sum, the Court finds that the two cases are parallel and, additionally, satisfy the Colorado River "exceptional circumstances" test. A review of the Seventh Circuit's recent decision in Illinois Bell Telephone Co. v. Box, Nos. 07-3557 & 07-3683, 2008 WL 2151573 (7th Cir. May 23, 2008) does not change this Court's assessment, as the case has no bearing on the instant motion. There, the Seventh Circuit confirmed that federal courts, pursuant to the 1996 Telecommunications Act, have the authority to review decisions of the ICC. This Court is not denying that it has jurisdiction to review the ICC's Order in this case. However, the Court does find that, in these unique circumstances, it must abstain from deciding the case at this point in the proceedings given the Illinois Appellate Court's concurrent jurisdiction, its ability to protect

Level 3's rights, its previous exercise of jurisdiction over this matter, and the parallel nature of the two, concurrently-filed suits. Thus, it is clear that a stay is the appropriate mechanism to protect the rights of all parties before this Court.

## III. CONCLUSION

For the foregoing reasons, the motions to stay filed by Defendant Commissioners Charles E. Box, Erin M. O'Connell-Diaz, Robert F. Lieberman and Lula M. Ford and by Defendant-Intervenors Neutral Tandem, Inc. and Neutral Tandem-Illinois, LLC are granted. The motions to dismiss, in the alternative, are denied. This matter is hereby stayed pending the outcome of the relevant state court proceedings.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 6/4/08